IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RALF MONDONEDO,
                    Plaintiff,

          v.                              CASE NO.  12-3082-SAC

KEITH C. HENDERSON,
et al.,
                    Defendants.


## MEMORANDUM AND ORDER

This civil complaint was filed by an inmate of the El Dorado Correctional Facility, El Dorado, Kansas.   Before screening of the original complaint was completed, plaintiff filed an Amended Complaint (Doc. 8).   The original complaint is completely superseded by the Amended Complaint, and the original complaint shall not be considered further.

Plaintiff attempts to sue his ex-wife for damages based upon the claim that she forged a prior co-signor's signature on additional law school student loans for him causing him to become indebted for $60,000.   He also sues an Assistant County Attorney for damages, based upon the claim that he aided plaintiff's ex-wife in escaping prosecution for her crimes against plaintiff.   Plaintiff is required to show cause why this action should not be dismissed for lack of jurisdiction and failure to state a federal constitutional claim.

**ASSESSMENT OF PARTIAL FILING FEE**

The statutory fee for filing a civil complaint is $350.00. Plaintiff has filed three Motions to Proceed Without Prepayment of Fees (Docs. 3,4,5), and has attached to one an Inmate Account Statement in support as statutorily mandated. He is reminded that under 28 U.S.C. § 1915(b)(1), a plaintiff granted such leave is not relieved of the obligation to pay the full fee of $350.00. Instead, he is merely entitled to proceed without prepayment of the full fee, and to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by § 1915(b)(2).

Furthermore, § 1915(b)(1) requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the filing of a civil action. Having examined the records of plaintiff's account, the court finds that the average monthly deposit was $ 52.08, and the average monthly balance was $ 13.15. The court therefore assesses an initial partial filing fee of $ 10.00, twenty percent of the average monthly deposit, rounded to the lower half dollar. Plaintiff must pay this partial fee before this action may proceed further, and is given time to submit it to the court. His failure to comply within

the time allotted may result in dismissal of this action without further notice.

**<u>SCREENING</u>**

Because Mr. Mondonedo is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.   28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, this case presents the unusual circumstance that Mr. Mondonedo apparently completed law school and was employed as an attorney prior to his incarceration.  In any event, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

**FACTUAL BACKGROUND, ALLEGATIONS, AND CLAIMS**

Mr. Mondonedo is serving sentences for convictions of Rape, Attempted Aggravated Incest, numerous counts of Aggravated Indecent Liberties with a child, and Criminal Sodomy with a child. The victim of these crimes is the daughter of defendant Noe. She was also plaintiff's stepdaughter. Plaintiff names as defendants his ex-wife Tiffany Noe who now resides in Texas; and Keith Henderson, Assistant District Attorney, Shawnee County, Kansas.

As the factual background for his complaint, plaintiff alleges as follows. On January 5, 2009, he attended a pretrial hearing in a civil case he had filed against Sallie Mae regarding his student loans. At this hearing he "discovered that Tiffany M. Noe had forged the signatures of plaintiff, plaintiff's sister, and plaintiff's brother-in-law, with the intent to defraud" and thereby obtained loans in the amount of about $60,000. Plaintiff telephoned Noe and said he would be home later to discuss her forgeries. When plaintiff arrived home, an officer from the Topeka Police Department (TPD) was waiting and informed him that "allegations of sexual misconduct were made" against him by defendant Noe regarding plaintiff's 16-year-old stepdaughter. About three months later, defendant Noe "left the State of Kansas."

Defendant Noe testified at plaintiff's criminal trial. During questioning by defense counsel, she "admitted that she had signed and/or created and mailed documents for the loans she obtained" in the amount of about $60,000. However, she additionally testified that she was directed by David Deatherage to co-sign on his behalf. David Deatherage testified that he "never gave authorization" to Noe to sign any documents on his or anyone else's behalf. Plaintiff alleges that at no time did he or either Deatherage give Noe authority to sign or make any loan document. Plaintiff is liable to Sallie Mae for the money "stolen" by Noe. The Deatherages filed complaints with the TPD regarding the forgeries by Noe. Defendant Henderson "agreed and conspired with" Noe that if she would testify against plaintiff at his trial for sex offenses, she would not be prosecuted for her crimes. Noe left Kansas on the advice of defendant Henderson with the intent to "avoid prosecution" until she testified against plaintiff. Upon plaintiff's "information and belief," defendant Henderson's intent was to cover-up and clear Noe of wrongdoing in order "to qualify her as a good witness against plaintiff." Defendant Henderson acted "as the legal representative" of defendant Noe and "helped her to abscond." Henderson was aware of Noe's crimes but "prevented plaintiff from bringing his claims" against her. Plaintiff asked defendant Henderson to investigate and prosecute Noe, but

Henderson refused and advised others against it.   The TPD
refused to investigate "due to the recommendation given by
(defendant Henderson)."   Henderson "had ulterior and ill motives
toward plaintiff based on race, and/or gender, and/or political
reasons."   Defendant Noe used defendant Henderson "and the
office of the District Attorney to prevent plaintiff from
obtaining remedies."

Plaintiff claims in counts I and II that defendants
conspired to and did violate his constitutional rights by
denying him due process and equal protection of the law.   He
cites 42 U.S.C. §§ 1985, 1986[1] and 18 U.S.C. §§ 241, 242; as well
as "State laws," specifying only K.S.A. 21-3302 (now K.S.A. 21-
5302, which defines the crime of conspiracy to commit a crime).

In Count III, plaintiff claims that defendant Henderson did
not act "to prevent the violations of plaintiff's Constitutional
Rights."   He cites 42 U.S.C. § 1986, 18 U.S.C. §§ 241, 242 "and
State law."

In Counts IV through VIII, X through XII, and XIV,
plaintiff claims that defendant Noe committed various crimes:
perjury, subordination (sic) of perjury, mail fraud, bank fraud,
theft, identity theft, aggravated identity theft, identify
fraud, forgery, and making false information.   As legal

[1]   Plaintiff's claims under §§ 1985 and 1986 fail because his only
references to racial or class-based discriminatory animus are completely
conclusory.

authority for these counts he cites the following federal statutes found in Title 18 U.S.C.: §§ 1621, 1622, defining the crimes of perjury and "subornation of perjury;" § 1341 defining the crimes of frauds and swindles; § 1344 defining the crime of bank fraud; and § 1028A defining the crime of aggravated identify theft. He also cites the following Kansas statutes that define state criminal offenses: K.S.A. 21-3805(a)(1) defining perjury, K.S.A. 21-4018(a)(currently K.S.A. 21-6107) defining identity theft and identity fraud; K.S.A. 21-3701(a)(1),(2) defining theft; and K.S.A. 21-3711 defining making false information. He claims that defendant Noe's commission of these crimes was with intent to violate, and resulted in violation of, his constitutional rights.

In Count IX, plaintiff claims that both defendants "obstructed the legal process." He cites K.S.A. 21-3808, which defines the state offense of obstructing legal process.

As Count XIII, plaintiff claims that both defendants denied his civil rights. For legal authority, he purports to quote K.S.A. 21-4003(a)(1) as prohibiting the denial of use of services of any state agency on account of "race, color, ancestry, national origin or religion." However, K.S.A. 21-4003 is currently K.S.A. 21-6002, and defines the offense of "official misconduct" by a public officer or employee. He also

cites K.S.A. 21-3808, which is currently K.S.A. 21-5904(a)(2) and defines the crime of "interference with law enforcement."

Plaintiff seeks a declaration that his rights have been violated and "actual damages" of $60,000 from each defendant "as restitution" for the money allegedly stolen from him by defendant Noe. He also seeks damages for denial of his rights, privileges, and legal remedies, as well as for mental and emotional injuries.

Plaintiff states that there is no administrative remedy available for the claims presented.

## FAILURE TO ESTABLISH JURISDICTION

Jurisdiction to proceed in a United States District Court is limited, and the plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. Because subject matter jurisdiction involves a court's power to hear a case, courts are obliged to determine whether it exists, even in the absence of a challenge. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006)(a federal court has an independent obligation to determine whether subject matter jurisdiction exists and may raise the issue at any stage in the litigation); *Penteco Corp. v. Union Gas System*, 929 F.2d 1519, 1521 (10th Cir. 1991).

8

The "basic statutory grants" of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for "federal-question" jurisdiction. Section 1332 provides for "diversity of citizenship" jurisdiction. Plaintiff fails to establish subject matter jurisdiction under either provision.

### 1.  *Federal Question Jurisdiction Not Established*

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "[F]ederal question jurisdiction must appear on the face of a plaintiff's well-pleaded complaint."  *Martinez v. United States Olympic Comm.*, 802 F.2d 1275, 1280 (10th Cir. 1986)(citations omitted); *Rice v. Office of Servicemembers' Group Life Ins.*, 260 F.3d 1240, 1245 (10th Cir. 2001)(citing *Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 808, 811-12 (1986)).  The phrase "arising under" means generally that "[a] suit arises under the law that creates the cause of action."  *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)).  "The complaint must identify the statutory or constitutional provision under which the claim arises, and allege sufficient facts to show that the case is one arising under federal law."  *Martinez*, 802 F.2d at 1280; *see also Cornelisen v. Gunnarson*, 24 F.Supp.2d 1246, 1247 (D. Utah

1998)(citing *id.*), *aff'd,* 162 F.3d 1172 (10th Cir. 1998)(Table);
*Franchise Tax Bd. v. Construction Laborers Vacation Trust For S.
Cal.*, 463 U.S. 1, 8 (1983). "[A] right or immunity created by
the Constitution or laws of the United States" is thus "an
essential" element "of the plaintiff's cause of action." *Id.* at
10-11 (quoting *Gully v. First Nat'l Bank in Meridian*, 299 U.S.
109, 112 (1936)).

Plaintiff disregards that both § 1331 and § 1332 are
"restricted to conveying jurisdiction over civil actions." *Kaw
Nation v. Springer*, 341 F.3d 1186, 1188 (10th Cir. 2003).
Without citing authority for doing so, he attempts to bring
federal civil claims pursuant to federal and state criminal
statutes. His citations to and alleged violations of criminal
statutes do not establish this court's jurisdiction. *See
Oppenheim v. Sterling*, 368 F.2d 516, 519 (10th Cir. 1966), *cert.
denied*, 386 U.S. 1011 (1967)("There is no legislative history
nor is there any case which has been cited to us or which we can
find which supports the view that a violation of [§ 1341]
affords the court federal question jurisdiction in a civil
case."); *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1178-79 (6th
Cir. 1979)(holding that no private action can arise from the
criminal statute). Generally, criminal statutes, state or
federal, do not create a private cause of action. *See e.g.,
Springer*, 341 F.3d at 1186. Instead, they are enacted to

protect the public at large and provide a penal remedy for their violation.

No penal statute cited by plaintiff, on its face, confers a private right of action. *See California v. Sierra Club*, 451 U.S. 287, 293 (1981)(stating that the "ultimate issue is whether Congress intended to create a private right of action"); *OMI Holdings, Inc. v. Howell*, 864 F.Supp. 1046 (D.Kan. 1994), *aff'd*, 107 F.3d 21 (10th Cir. 1997); *Boisjoly v. Morton Thiokol, Inc.*, 706 F.Supp. 795 (D.Utah 1988); *Creech v. Federal Land Bank of Wichita*, 647 F.Supp. 1097 (D.Colo. 1986); *Barr v. Camelot Forest Conservation Ass'n, Inc.*, 153 Fed.Appx. 860, 862 (3rd Cir. 2005)(affirming district court's dismissal of claims brought under 18 U.S.C. §§ 241 and 242 because they "are criminal offenses for which there is no civil remedy")(unpublished),[2] *cert. denied*, 547 U.S. 1193 (2006); *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 346 (5th Cir. 1977)(noting that no private right of action exists under the federal mail-fraud statutes); *DIRECTV, Inc. v. Cavanaugh*, 321 F.Supp.2d 825, 834 (E.D.Mich. 2003)(noting that 18 U.S.C. § 876 "does not authorize a civil remedy"). Nor do plaintiff's conclusory statements that crimes were committed with "deliberate indifference" and his constitutional rights were violated "engraft" a private remedy

---

[2]     Unpublished opinions are not cited herein as binding precedent, but for persuasive value.  See Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

onto the cited criminal statutes. Furthermore, "[c]riminal statutes cannot be enforced by civil actions." *See Winslow v. Romer*, 759 F.Supp. 670, 673 (D.Colo. 1991)("private citizens generally have no standing to institute criminal proceedings"). Mr. Mondonedo is a private citizen and has no standing to institute criminal proceedings through a civil lawsuit. *See Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Newcomb v. Ingle*, 827 F.2d 675, 677 n. 1 (10th Cir. 1987); *see generally, Diamond v. Charles*, 476 U.S. 54, 64-65 (1986)(private citizens cannot compel enforcement of criminal law); *Martinez v. Ensor*, 958 F.Supp. 515, 518 (D.Colo. 1997). Moreover, Mr. Mondonedo cannot recover civil damages for an alleged violation of a strictly criminal statute. *Snow v. Neece*, 727 F.2d 947, 949 (10th Cir.), *cert. denied*, 466 U.S. 976 (1984); *see also Creech*, 647 F.Supp. at 1099. The court concludes that plaintiff utterly fails to establish federal court jurisdiction by alleging violations of the cited criminal statutes. *See Weiss v. Sawyer*, 28 F.Supp.2d 1221, 1227 (W.D. Okla. 1997).

Plaintiff more appropriately also asserts jurisdiction under 28 U.S.C. § 1343. However, in order to state a civil rights claim pursuant to § 1983, he must allege a deprivation of a federal or constitutional right by a person acting under color of state law. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988). Mr. Mondonedo makes bald assertions

of violations of due process and equal protection.  But, as discussed more fully later herein, he does not allege sufficient facts to show a violation of any federal constitutional provision.

### 2.  *Diversity Jurisdiction Not Established*

Mr. Mondonedo also fails to allege sufficient facts to establish that this court has diversity jurisdiction over his claims.  As noted, federal district courts have jurisdiction over civil actions where complete diversity of citizenship and an amount in excess of $75,000 (exclusive of interest and costs) in controversy exist.  28 U.S.C. § 1332.  As interpreted, § 1332 provides federal district courts with original diversity jurisdiction "only if there is no plaintiff and no defendant who are citizens of the same State."  *See Carden v. Arkoma Associates*, 494 U.S. 185, 187 (1990)("Since its enactment, [the Supreme Court] has interpreted the diversity statute to require 'complete diversity' of citizenship."); *Ravenswood Investment Co., L.P. v. Avalon Correctional Services*, 651 F.3d 1219, 1223 (10th Cir. 2011)(stating that when jurisdiction is based on diversity, "each plaintiff must be diverse from each defendant to have what is known as complete diversity")(citation omitted)); *Gadlin v. Sybron Intern. Corp.*, 222 F.3d 797, 799 (10th Cir. 2000)(*quoting Wisconsin Dept. of Corrections v.*

*Schacht*, 524 U.S. 381, 388 (1998)).  For this type of jurisdiction, plaintiff had the duty to plead the citizenship of all parties.  *See e.g., Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 (D.C.Cir. 1983)("the party seeking the exercise of diversity jurisdiction bears the burden of pleading the citizenship of each and every party to the action" (citations omitted)).  Diversity is determined based upon the citizenship of the parties at the time the action was brought.  *See Symes v. Harris*, 472 F.3d 754, 758 (10th Cir. 2006).  A diversity action should be dismissed if at any time it becomes apparent that there is a lack of diversity.  *Bradbury v. Dennis*, 310 F.2d 73 (10th Cir. 1962), *cert. denied*, 372 U.S. 928 (1964).  The presence in this case of Kansas citizens as plaintiff and defendant precludes diversity jurisdiction.  *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 67-68 (1996).

Plaintiff also asserts jurisdiction under the Kansas long-arm statute.[3]  However, this statute is only useful to obtain personal jurisdiction over a nonresident defendant in a diversity action.  *See Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304-05

---

[3]    The Kansas long arm statute, K.S.A. § 60-308(b)(1)(B), provides in pertinent part that "any person, whether or not a citizen or resident of this state," who commits a "tortious act within the state" does "thereby submit() the person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of (this act)."

(10th Cir. 1994).  As noted, the complaint in this case does not support diversity.

## FAILURE TO STATE A CLAIM

The court finds that plaintiff fails to state a claim for relief under § 1983 because he does not allege facts showing that defendant Noe acted under color of state law, defendant Henderson is entitled to absolute immunity, and plaintiff does not allege facts showing the deprivation of a federal or constitutional right by either defendant.

### 1.  *Failure to Allege State Action by Defendant Noe*

"To bring an action under § 1983, a plaintiff must establish that the defendant acted under color of state law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)(Section 1983 does not impose liability in the absence of action taken under color of state law.); *Wakeland v. Montano*, 203 F.3d 836, *3 (10th Cir. 2000)(Table)(*citing see Pino v. Higgs*, 75 F.3d 1461, 1464 (10th Cir. 1996)).  In order to hold private individual Noe liable under § 1983 for a constitutional violation, the plaintiff must show that her conduct is "fairly attributable to the state."  *See Pino,* 75 F.3d at 1465; *see also Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442, 1447-57 (10th Cir. 1995)(discussing four tests for determining state

action).   To be "fairly attributable to the state, two conditions must be met:

> [f]irst, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the state is responsible. Second, the private party must have acted together with or . . . obtained significant aid from state officials or engaged in conduct 'otherwise attributable to the State.'

*Pino*, 75 F.3d at 1465 (quoting *Wyatt v. Cole*, 504 U.S. 158, 162 (1992)); *West v. Atkins*, 487 U.S. 42, 49 (1988)(The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."). Private acts are not considered acts under color of state law unless that conduct is furthered by an actual or purported state authority. *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995); *see also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)(court must determine whether private party's "conduct has sufficiently received the imprimatur of the State so as to make it 'state action' for purposes of the Fourteenth Amendment"). A conspiracy between a private party and a state official, if properly alleged, could satisfy the state-action element. *See Tower v. Glover*, 467 U.S. 914, 920 (1984)(private person acts "under color of" state law when engaged in conspiracy with state officials to deprive

another of federal rights); *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 n. 6 (10th Cir. 1990). However, conclusory allegations without supporting factual averments are insufficient; the pleadings must specifically present facts showing agreement and concerted action. *Id.* ("[T]o the extent that a conspiracy may form the basis for a § 1983 claim, 'a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants;' conclusory allegations of conspiracy are not enough.")(*citing Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998)); *Cabututan v. Hunsaker*, 989 F.2d 507, *2 (10th Cir. 1993)(citing *Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983)). In *Sooner,* the Tenth Circuit instructed that the pleadings "standard is even stricter where the state officials allegedly involved in the conspiracy are immune from suit," as is the county attorney in the instant case. *Id.* at 512. In *Norton v. Liddel*, 620 F.2d 1375, 1380 (10th Cir. 1980), the Tenth Circuit held that the plaintiff was required to demonstrate "the existence of a significant nexus or entanglement between the absolutely immune state official and the private party in relation to the steps taken by each to fulfill the objects of their conspiracy." *See Cabututan*, 989 F.2d at *2. "If the action of the defendant does not qualify as state action, then

the inquiry into section 1983 liability ends." *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982).

To satisfy the state-action element as to private party Noe, plaintiff maintains that Noe was engaged in one or more conspiracies with state actor defendant Henderson.  In support, he alleges that defendant Noe left the State of Kansas on the advice of defendant Henderson to avoid criminal prosecution; that Henderson agreed and conspired with Noe that in exchange for her testimony against plaintiff at his criminal trial she would not be prosecuted; and that Henderson then refused to prosecute Noe for her crimes.  Plaintiff alleges that these allegations are "evident, upon information and belief."

The court has no difficulty determining that plaintiff's allegations are insufficient to satisfy the "color of state law" element with respect to defendant Noe.  The Amended Complaint sets forth no facts suggesting that Noe was functioning in any capacity other than as a private actor at the time she is alleged to have signed another's name to plaintiff's school loan documents.  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)(the state law requirement of § 1983 necessarily "excludes from its reach merely private conduct, no matter how . . . wrongful")(internal quotation marks and citations omitted). Nor is there any indication of a nexus between her and defendant Henderson or any other state official at this time.

Plaintiff does not plead facts showing that Noe's move out of state was "made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49. Nor is Noe's move shown to have violated plaintiff's federal constitutional rights or to have been unlawful in any other manner. Plaintiff alleges that by moving, defendant Noe escaped prosecution for criminal acts that damaged him monetarily. He also alleges that defendant Henderson refused to prosecute her and discouraged others from doing so. However, Mr. Mondonedo had no constitutional right to have Noe criminally prosecuted. *Nelson v. Skelan*, 386 Fed.Appx. 783, 786 (10th Cir. 2010)(unpublished), *cert. denied*, 131 S.Ct. 912 (2011). He claims that his personal remedies against Noe were denied by defendants' acts. Yet he does not allege that he attempted to recover his monetary losses from Noe by way of an appropriate civil tort action in state court and was prevented from doing so because of Noe's move or any act on the part of Henderson.

Noe's act of reporting suspected criminal activity to police did not constitute state action. *See Carey v. Continental Airlines, Inc.,* 823 F.2d 1402, 1404 (10th Cir. 1987)(no state action for private party who complaints to police, who then arrest plaintiff); *Nielander v. Board of County Com'rs of County of Republic, Kan.,* 582 F.3d 1155, 1166 (10th Cir. 2009); *see also Scott v. Hern*, 216 F.3d 897, 906-07 (10th

Cir. 2000); *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983)("We know of no case in which the report of a state crime is action under color of state law.  The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or 1985.").

Likewise, Noe's testifying at plaintiff's criminal trial neither constituted state action nor violated plaintiff's federal constitutional rights.[4]  Witnesses do not act under color of state law and in any event are absolutely immune to suit for money damages.  *See Hunt*, 17 F.3d at 1268 (citing *Briscoe v. LaHue*, 460 U.S. 325, 341, 345-46 (1983)(All witnesses enjoy absolute immunity from civil liability under § 1983 for their testimony in a prior trial.); *Snell v. Tunnell*, 920 F.2d 673, 686 (10th Cir. 1990).

Underlying facts are not provided to show that plaintiff's conclusory statements of a conspiracy are more than mere

_____

[4]   If plaintiff is suggesting that Noe testified falsely at his criminal trial in exchange for the prosecutor's agreement not to prosecute her on unrelated charges, such a claim must have been fully litigated as a challenge to his state conviction in the first instance.  The criminal prosecution of plaintiff was not terminated in his favor, and he does not allege that his convictions have been overturned on either direct or collateral appeal.  Under these circumstances, any challenge to his prosecution is premature.  *Heck v. Humphrey*, 512 U.S. 477 (1994)(holding that prisoners may not recover damages under 1983 "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the conviction or sentence has been "reversed, expunged, invalidated or impugned by grant of a writ of habeas corpus.")

speculation on his part.[5]   The complaint as a whole is utterly devoid of fact allegations showing the requisite meeting of the minds and an "agreement" between defendants to commit acts that would violate plaintiff's federal constitutional rights.   In sum, the court finds that plaintiff fails to show that defendants shared a common goal to violate his federal constitutional rights.   The court concludes that defendant Noe is not shown to have acted under color of state law. *Sigmon v. Community HMO, Inc.,* 234 F.3d 1121, 1126 (10th Cir. 2000).

### 2. *Defendant Henderson Absolutely Immune to Damages Suit*

Based upon the fact allegations in the complaint, as opposed to the conclusory statements, the court finds that absolute immunity protects defendant Henderson from liability in this lawsuit. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)(prosecuting attorneys are absolutely immune for those activities which are "intimately associated with the judicial phase of the criminal process.").   Consequently, plaintiff's allegations that defendant Henderson suborned Noe's testimony in County District Court and helped her cover up her own crimes to appear more credible are barred by the doctrine of absolute prosecutorial immunity. *See Miller v. Glanz*, 948 F.2d 1562, 1570 (10th Cir. 1991)(absolute immunity extends to claim that

---

[5]    Plaintiff's allegation that defendant Henderson acted as plaintiff's "legal advocate" is supported by no facts whatsoever.

prosecutor conspired with witnesses to give false testimony); *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir.), *cert. denied*, 513 U.S. 832 (1994).  The same is true regarding plaintiff's claims that defendant Henderson declined to prosecute Noe. Whether and when to prosecute and the handling of prosecution witnesses are decisions made by a prosecutor in the course of his duty as an advocate.  *Imbler*, 424 U.S. at 431 n. 33.  As the Tenth Circuit Court of Appeals stated in *Dohaish v. Tooley*, 670 F.2d 934, 938 (10th Cir.), *cert. denied*, 459 U.S. 826 (1982): "the decision not to prosecute criminal charges is similar to the decision to prosecute and should therefore be protected by absolute immunity."  *Hammond v. Bales*, 843 F.2d 1320, 1321 (10th Cir. 1988).

Under 28 U.S.C. § 1367, a court has supplemental jurisdiction of a plaintiff's state law claims that arose from the "same nucleus of operative facts," but only if jurisdiction is properly invoked under either § 1331 or § 1332.  Based on the foregoing findings that jurisdiction has not been properly invoked, the court declines to consider plaintiff's state law claims.

**SUMMARY**

In sum, this court does not have jurisdiction to hear a case between citizens of the same state that does not involve

claims under federal civil laws or the Constitution.  Plaintiff is given time to show cause why this action should not be dismissed for lack of jurisdiction and failure to state a claim. If he fails to show good cause within the specified time, this action may be dismissed without further notice.

## DENIAL OF MOTION FOR PROTECTIVE ORDER

Plaintiff has filed a Motion for Protective Order (Doc. 7). In this motion, he asks the court to restrain "defendants" from punishing him for serving legal documents upon defendants in this case.   The two defendants in this action have not been and need not be served in this case until the screening process is completed.  Since defendants have not been served, they are not yet required to respond to any motion or materials filed by plaintiff.  It is not clear at this juncture that this court has jurisdiction over Noe or the subject matter of this complaint, or that plaintiff states a federal constitutional claim.  In any event, there are no facts alleged in the motion showing that plaintiff is under threat of being punished by either named defendant.  Prison officials are not defendants in this action, and no order may be entered against non-parties.  The court denies this motion as frivolous because it is not supported by facts or legal authority showing that plaintiff is entitled to the requested court action.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff is granted thirty (30) days in which to submit to the court an initial partial filing fee of $ 10.00.  Any objection to this order must be filed on or before the date payment is due.  The failure to pay the fees as required herein may result in dismissal of this action without prejudice.

**IT IS FURTHER ORDERED** that within the same thirty-day period, plaintiff is required to show cause why this action should not be dismissed for lack of jurisdiction and for failure to state a federal constitutional claim.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Protective Order (Doc. 7) is denied.

**IT IS SO ORDERED.**

Dated this 9th day of August, 2012, at Topeka, Kansas.

**s/Sam A. Crow**
**U.S. Senior District Judge**