IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RALF MONDONEDO,
                    Plaintiff,

              v.                        CASE NO.  12-3082-SAC

KEITH C. HENDERSON,
et al.,
                    Defendants.


MEMORANDUM AND ORDER

     In this action filed by a state prisoner as a civil rights

complaint under 42 U.S.C. § 1983, Mr. Mondonedo attempts to sue

his ex-wife Tiffany Noe for damages based on her alleged forgery

of signatures on additional student loan applications submitted

in his name.[1]  He also seeks to sue Keith C. Henderson based on

allegations that Henderson conspired with defendant Noe to

deprive plaintiff of his constitutional rights.   In the Amended

Complaint, Henderson was alleged to be an Assistant District

Attorney in Shawnee County, Kansas, and the prosecutor in the

state criminal case against Mr. Mondenedo.


BACKGROUND

_____

[1]     Plaintiff alleged that during questioning by his defense counsel at his
criminal trial, Noe admitted signing another's name on the loan document but
testified that she was directed by Mr. Deatherage, plaintiff's brother-in-
law, to co-sign on his behalf.   Deatherage and plaintiff testified that no
such authorization was given.   Plaintiff sued Fannie Mae before he was
imprisoned, but provides no information from any civil action that might have
determined either his indebtedness or Noe's alleged forgery.

With respect to defendant Noe, plaintiff's background allegations may be summarized as follows. On January 5, 2009, he discovered his then-wife's forgeries and telephoned her that he was coming home to discuss it. Upon his arrival, a Topeka police officer was waiting and took him in for questioning upon Noe's report of his sexual misconduct with her daughter. Plaintiff has remained incarcerated since that time. He alleges that he is currently indebted to Sallie Mae for the loan proceeds "stolen" by defendant Noe. In April 2009, defendant Noe "absconded" to Texas, where she currently resides. In November 2009, Mr. Mondonedo was convicted of 12 offenses "stemming from the sexual molestation of his underage stepdaughter" including Rape, Attempted Aggravated Incest, 6 counts of Aggravated Indecent Liberties with a child, and 2 counts of Criminal Sodomy with a child. See *State v. Mondonedo*, 2700 P.3d 1231, *1 (Kan.App. 2012), *review denied* (Kan. Apr. 8, 2013). He is currently serving sentences for these convictions. Defendant Noe and her daughter testified for the State at plaintiff's criminal trial.

Plaintiff seeks a declaration that his rights were violated; "actual damages" in the form of "restitution" for the money "stolen" by defendant Noe; and nominal, compensatory, and punitive damages for the denial of his rights, privileges, and legal remedies as well as mental and emotional injuries.

The court previously screened the Amended Complaint and entered a Memorandum and Order (hereinafter SCRNORD) requiring plaintiff to show cause why this action should not be dismissed. Plaintiff filed a Response (Doc. 10)(hereinafter RESP).  Having considered the RESP together with all the materials in the file, the court dismisses this action for the reasons stated in the SCRNORD and herein, including lack of jurisdiction and failure to allege facts to support a federal constitutional claim against either defendant.

**DISCUSSION**

In his Amended Complaint, Mr. Mondonedo asserted jurisdiction under 28 U.S.C. §§ 1331 and 1332 based on alleged violations of federal and state criminal statutes and federal constitutional rights.  In the SCRNORD, the court found that plaintiff (1) failed to establish federal question jurisdiction under § 1331, (2) failed to establish diversity jurisdiction under § 1332, (3) failed to allege facts establishing that defendant Noe acted "under color of state law," and (4) that the damages claims against defendant Henderson were barred by prosecutorial immunity.  Rather than specifically addressing each of these deficiencies, plaintiff repeats all the counts from his complaint in his Response together with the allegations, arguments, and statements made therein.  When the

3

repetitive allegations and arguments, bald statements, and legal conclusions are disregarded in plaintiff's Response, few additional allegations and arguments remain. It is apparent that Mr. Mondonedo disagrees with the court's findings in the SCRNORD, because he declares that he adequately alleged violations of his federal constitutional rights and his rights "created by federal statutes" by defendants and that defendants acted under color of state law. Each deficiency in the Amended Complaint is discussed below along with any counter argument or new facts discernible from plaintiff's Response.

### A.  *Jurisdiction*

Plaintiff was advised that the jurisdiction of a United States District Court is limited, and he bears the burden of demonstrating that jurisdiction exists. 28 U.S.C. § 1331 provides for "federal-question" jurisdiction, while 28 U.S.C. § 1332 provides for "diversity of citizenship" jurisdiction.

### 1.  *Federal Question Jurisdiction is not Established*

In the Amended Complaint, plaintiff attempted to establish federal-question jurisdiction by citing numerous federal and state criminal statutes and claiming that defendants violated these laws. The court rejected this as a basis for federal-question jurisdiction because none of the cited statutes created a private cause of action. Plaintiff was informed that the "complaint must identify the statutory or constitutional

4

provision under which the claim arises, and allege sufficient facts to show that the case is one arising under federal law." *Martinez v. United States Olympic Comm.*, 802 F.2d 1275, 1280 (10TH Cir. 1986).

In his Response, plaintiff repeats that he stated a claim under § 1331 because his claims arise under federal laws. He then cites the same 7 federal criminal statutes from his Amended Complaint, and again claims that defendants violated his constitutional rights under these federal laws. He also cites the same 8 state criminal statutes and claims again that defendants violated these state laws. Mr. Mondonedo basically ignores the court's discussion and holding in the SCRNORD that the cited criminal provisions do not provide a basis for federal-question jurisdiction. The only addition in plaintiff's Response is the following statement:

> All (federal) penal statutes presented by plaintiff in this case . . . are no part of this action as a civil action but rather presented as plaintiff's duty to set the record in favor . . . of the United States Prosecutors duties against the crimes committed by defendants. . . .

RESP (Doc. 10) at 3. This statement would seem to indicate that plaintiff no longer relies upon the federal criminal statutes to support his assertion of federal-question jurisdiction. However, he continues to argue that defendants violated his federal constitutional rights by violating these criminal laws.

Plaintiff's repeated allegations that defendants acted with deliberate indifference, reckless disregard, and malicious intent toward him in violating these criminal statutes are again rejected as conclusory and formulaic.  Such allegations do not "engraft" a private remedy onto a criminal statute.  In any event, Mr. Mondonedo simply cannot recover civil damages for an alleged violation of a strictly criminal statute.  The court concludes that plaintiff's citations to federal and state criminal statutes and allegations that defendants violated criminal statutes provide no support for his assertion of federal-question jurisdiction.

Plaintiff suggests that this court has subject matter jurisdiction under § 1983.  However, § 1983 does not itself confer any rights; it is merely a vehicle through which a plaintiff may sue to recover for violations of a federal right that can be found in the Constitution or other federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002).  Similar to § 1331, the first element that a plaintiff must establish in order to state a claim under § 1983, is that he was deprived of a right secured by the Constitution or laws of the United States. Section 1983 cannot "fill the gap" for what is clearly absent from the federal criminal statutes cited by plaintiff, i.e., the existence of a private right of action to enforce those statutes."  See *Blessing v. Freestone*, 520 U.S. 329, 340

(1997)("In order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal right, not merely a violation of federal law.").

Plaintiff continues to assert violations of the 5th and 14th Amendments to the United States Constitution, and the court liberally views these assertions as his stated grounds for relief under § 1983. In the SCRNORD, the court found that plaintiff's "bald assertions of violations of due process and equal protection" were not supported by sufficient facts. In his RESP, plaintiff still fails to provide a distinct factual basis for either of these constitutional claims. His denial of due process claim appears to be based upon his allegations that defendant Noe committed acts that deprived him of money and he has been unable to recover damages.[2] His equal protection claim appears to be based upon allegations that defendants took acts to avoid Noe's criminal prosecution, which denied plaintiff protection under the criminal laws, and "prevented plaintiff

---

[2]    Plaintiff's allegation that defendant Noe stole money from him, taken as true, indicates nothing more than a private act and does not suggest that plaintiff was entitled to due process prior to the criminal deprivation. Plaintiff's bald allegation that he was denied due process in that his "personal remedies" were denied remains unsupported by any facts. He does not describe a single proper civil action brought by him against Noe or the acts of each defendant that actually impeded him from pursuing civil remedies. Certainly, his allegation that Noe moved to Texas 3 months after causing his monetary loss does not, without more, establish that defendants prevented him from seeking personal recovery. Nor does plaintiff explain how Noe's avoidance of criminal prosecution implicates any of his due process rights. In short, plaintiff utterly fails to allege facts that elevate defendant Noe's alleged criminal conduct to a violation of plaintiff's federal due process rights.

from bringing his claims" against Noe and "obtaining remedies" for his loss.[3]  Thus, faced with court's SCRNORD finding that the facts alleged were insufficient to state a federal constitutional claim, plaintiff simply re-alleges the same facts.  This court may not supply additional factual allegations to round out plaintiff's complaint or construct a legal theory on his behalf.  The court concludes that plaintiff fails to state a claim under the 5th and 14th Amendments.

---

[3]    Plaintiff now claims that defendant Henderson violated his right to equal protection by preventing him from obtaining legal help and "protection from the State against the crimes" committed by Noe.  He alleges that he was "intentionally treated differently from others similarly situated" without rational basis when Henderson refused to act on Noe's crimes and "advised her to leave the State to cover up their misconduct."  Plaintiff's implication that he was prevented from pursuing civil remedies against Noe was already rejected as conclusory.  The Equal Protection Clause prohibits state and local governments from treating similarly situated persons differently. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439-41 (1985).  To make such a claim, as a class of one, plaintiff "must prove that he was singled out for persecution due to some animosity" on the part of defendants by showing that "the action taken by the state . . , was a spiteful effort to 'get' [him] for reasons wholly unrelated to any legitimate state objective." *Bartell v. Aurora Public Schools*, 263 F.3d 1143, 1149 (10th Cir. 2001)(quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995)).  The court reiterates that Mr. Mondonedo has no right to the criminal prosecution of another (*Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").  Mr. Mondonedo proffers neither a legal theory under which the failure to prosecute Noe amounted to persecution of him nor any explanation as to how not prosecuting Noe injured him personally.  Mr. Mondonedo does not refer to a particular law and describe how it was applied to him differently than to other similarly situated persons.  He references many criminal statutes intended to protect the public at large, but these laws were presumably published at the time Noe allegedly committed her crimes, and the fact that the laws and their penalties did not deter her criminal acts is not attributable to defendant Henderson.  In sum, plaintiff fails to present either a legal or factual basis for his denial of equal protection claim.

The other federal civil statutes relied upon by plaintiff are 42 U.S.C. §§ 1985 and 1986.[4]  Section 1985 provides a cause of action for "conspiracy to interfere with civil rights."  *Id.* In the SCRNORD and herein the court has held that plaintiff's allegations of violations of the 5th and 14th Amendments are not supported by sufficient facts.  The court reasoned that the § 1985 claim failed because plaintiff's "only references to racial or class-based animus are completely conclusory."[5]  The court found that the Amended Complaint was "utterly devoid of fact allegations showing the requisite meeting of the minds and an agreement between defendants" to violate plaintiff's federal constitutional rights.  Plaintiff has never specified which subsection of § 1985 he asserts.  In his RESP, he simply repeats his allegations that defendants violated § 1985 "by conspiring to deprive plaintiff" of his constitutional rights under the Fifth and Fourteenth Amendments "and other Federal and State laws."  This statement is nothing more than a formulaic recitation of the cause of action in § 1985(3), which is insufficient.  He also baldly alleges that defendants conspired

---

[4]     A § 1986 claim (failure to prevent a conspiracy) is premised upon the existence of a § 1985 claim (conspiracy to violate rights).  It follows that the § 1986 claim need only be discussed when plaintiff has stated a colorable § 1985 claim.  See *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir. 1990).

[5]     Section 1985(3) requires a plaintiff to allege some invidious racial or otherwise class-based discriminatory animus underlying the defendant's actions.

to obstruct justice, which is a formulaic recitation from §
1985(2).   In his RESP, plaintiff again fails to present specific
facts showing any actual agreement and concerted action between
defendants.   His only additional allegations are speculation and
innuendoes, which are not sufficient to state a claim upon which
relief may be granted.   See *Griffin v. Breckenridge*, 403 U.S.
88, 102 (1971); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214,
1225 and n. 13 (10th Cir. 2006).   "Vague and conclusory
allegations of a conspiracy are not sufficient when unsupported
by a description of particular over acts."   *Benavidez v.
Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983).[6]   The court finds
that plaintiff fails to allege sufficient facts to state a
conspiracy claim under either subsection (2) or (3) of § 1985,
and therefore states no cause of action under § 1986.

The court concludes, for reasons stated in the SCRNORD and
herein, that plaintiff fails to allege sufficient facts to state
a claim under 42 U.S.C. §§ 1983, 1985 and 1986.   Because the
Amended Complaint fails to state a federal constitutional claim,
it is dismissed as frivolous and for failure to state a claim
pursuant to Section 1915(e)(2).

   **2.   *Diversity Jurisdiction is not Established***

---

[6]   Plaintiff's failure to state facts to support his claims of conspiracy
is discussed in more detail later herein.

In the SCRNORD the court found that plaintiff failed to establish diversity jurisdiction because his allegations in his Amended Complaint indicated that both he and defendant Henderson were citizens of the State of Kansas. In the course of discussing this issue, plaintiff was informed that complete diversity is required.[7] Nevertheless, plaintiff persists in pursuing defendants jointly herein. Mr. Mondonedo was also informed that he has the duty to plead the citizenship of all parties. See *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936)(The party seeking the exercise of jurisdiction in his favor "must allege in his pleading the facts essential to show jurisdiction."). Now in his RESP, plaintiff makes the following new allegations:

> Henderson is no longer an employee of . . . Shawnee County . . . and is a resident of another State since he was terminated due to his violations of the laws the day that he obtained an illegal conviction of plaintiff. (plaintiff case is currently under appeal . . . directly with the Supreme Court).

RESP at 2. These bald allegations regarding defendant Henderson are entirely unsubstantiated and do not establish that Henderson is a citizen of a state other than Kansas.[8] Mere conclusory

---

[7]     Plaintiff was also informed in the SCRNORD that the amount in controversy must exceed $75,000. In his RESP, he newly alleges that he was damaged in an amount exceeding $100,000, rather than the $60,000 alleged in his Amended Complaint.

[8]     Plaintiff's innuendos that defendant Henderson was "terminated for law violations" in obtaining his "illegal conviction" are inconsistent with the fact that Mondonedo's convictions were affirmed by the Kansas Court of

allegations of jurisdiction are to be ignored. See *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). Plaintiff alleged facts that destroyed diversity in his Amended Complaint and in his Response makes only conclusory allegations to repair diversity. Significantly, he does not even provide Henderson's current residential address and exhibits no proof that since the filing of this action defendant Henderson established citizenship outside this state. See *Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972). The court concludes that plaintiff has failed to allege facts in his pleadings that are necessary for the court to determine the existence of diversity jurisdiction. *Martinez v. Martinez*, 62 Fed.Appx. 309, 313 (10th Cir. 2003). Accordingly, plaintiff's assertion of jurisdiction under 28 U.S.C. § 1332 fails for the reasons stated herein and in the SCRNORD.[9]

**B.  *Failure to State a Claim against Defendant Noe***

The second element that a plaintiff must establish in order to state a claim under § 1983 is that the alleged deprivation of a federal right was committed "under color of state law." Plaintiff seeks damages from his ex-wife based on allegations that she forged signatures on documents causing him to become liable on school loans issued in an amount over $100,000. The

Appeals and review was denied by the Kansas Supreme Court.

[9]    Plaintiff also fails to establish jurisdiction by simply citing the Kansas long-arm statute.

court found in the SCRNORD that plaintiff failed to state a claim against defendant Noe mainly because plaintiff's allegations were insufficient to show that Noe acted "under color of state law."  The court reasoned that no facts alleged by plaintiff suggested that Noe was functioning in other than her private capacity at the time of the alleged crimes. Plaintiff has not cured this fatal defect in his claims against defendant Noe.

In an effort to satisfy the state-action element as to defendant Noe, plaintiff maintains that private actor Noe acted in conspiracy with state actor defendant Henderson.  Plaintiff alleged in his Amended Complaint and repeats in his Response that by moving out of state, defendant Noe escaped prosecution for her alleged criminal acts.  However, the court found that plaintiff had not pleaded facts indicating that Noe's move out of state violated his federal constitutional rights or was made possible only because she was "clothed with the authority of state law;"[10] and that plaintiff had no federal constitutional right to Noe's prosecution.  Mr. Mondonedo was advised in the SCRNORD that a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 679 (citation

---

[10]     "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

omitted).   The *Iqbal* evaluation requires a two-pronged analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.   *Id.* at 678-681.   Secondly, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."   *Id.* at 681. Furthermore, plaintiff was informed of the Tenth Circuit's instruction that the pleadings standard is "even stricter" where the state official allegedly involved in the conspiracy is immune from suit.   Plaintiff agrees with the court that a conspiracy between a private party and a state official, if properly alleged, could satisfy the state-action element. However, he has paid little heed to the court's advisements that conclusory allegations of a conspiracy are not sufficient, and that the pleadings must specifically present facts showing agreement and concerted action.

In his Response, plaintiff repeats his bald allegations that defendant Noe "used" defendant Henderson "and the office of the District Attorney to prevent plaintiff from obtaining remedies" and that plaintiff was engaged in one or more conspiracies with state actor defendant Henderson.   He also repeats his bare assertions that defendant Noe left the State of Kansas on the advice of Henderson to avoid criminal prosecution,

that Henderson refused to prosecute Noe for her crimes, and that "Henderson had agreements with" Noe "to brake (sic) laws and to violate plaintiff's constitutional rights."[11]  Mr. Mondonedo has not adequately responded to the defects in his conspiracy theory by alleging specific facts showing agreement and concerted action between defendants Noe and Henderson.  Instead, he adds several conclusory allegations regarding the intentions of, and purported agreements between, defendants.  However, none of these allegations is shown to be based upon Mr. Mondonedo's personal knowledge of specific events, but rather are purportedly based upon "information and belief."  Nowhere does plaintiff describe a plausible factual scenario that evinces the intentions or agreements he ascribes to defendants.  These self-serving allegations appear to be nothing more than speculation on plaintiff's part.  As a result, they are not entitled to a presumption of truth and do not amount to factual support for plaintiff's claims.[12]  In short, plaintiff's allegations that Noe

---

[11]    The acts of defendant Noe that allegedly violated plaintiff's federal constitutional rights may be summarized as: (1) committed criminal acts including forgery, which caused plaintiff monetary loss and (2) moved out of state to avoid prosecution and prevent plaintiff's recovery for that loss.

[12]    The rejected conclusory allegations include: "upon information and belief" that "soon after Noe made allegations against plaintiff," Henderson advised Noe to leave the State of Kansas to avoid prosecution until she testified against plaintiff; defendant Henderson acted "as the legal representative" of defendant Noe and "helped her to abscond; "upon information and belief," defendant Henderson intended to cover-up Noe's crimes "to keep her . . . clear of all wrongdoings just to qualify her as a good witness against plaintiff;" Henderson was aware of Noe's crimes but "prevented plaintiff from bringing his claims" against her; Henderson advised

acted in concert with defendant Henderson remain vague and conclusory and therefore inadequate to imbue her with state actor status.[13] The court finds that plaintiff has utterly failed to demonstrate "the existence of a significant nexus or entanglement between" the immune state official Henderson and the private party Noe "in relation to the steps taken by each to fulfill the objects of their conspiracy." Accordingly, the court concludes that plaintiff states no claim in federal court against defendant Noe.[14]

### C. Failure to State a claim against Defendant Henderson

In the Amended Complaint and again in his Response, plaintiff claims that defendant Henderson knew of Noe's crimes but refused to investigate or prosecute her;[15] "advised others" not to prosecute her; and violated plaintiff's Fifth and

---

"others" not to prosecute Noe; and defendant Noe "used" defendant Henderson "and the office of the District Attorney to prevent plaintiff from obtaining remedies."

[13]   Thus, accepting as true that defendant Noe engaged in criminal acts that damaged plaintiff, the complaint against Noe fails to state a claim in federal court because her acts are not shown to have been taken under color of state law.

[14]   The court also found in the SCRNORD that Noe's act of reporting suspected criminal activity to police did not constitute state action and that her testifying at plaintiff's criminal trial neither constituted state action nor violated plaintiff's federal constitutional rights. Plaintiff was informed that, to the extent he claims that Noe testified falsely at his trial in exchange for the prosecutor's agreement not to prosecute her on unrelated charges, such claim must have been fully litigated in the first instance as a challenge to his state conviction and is barred as premature unless and until his convictions have been overturned. *Heck v. Humphrey*, 512 U.S. 477 (1994).

[15]   Plaintiff has repeatedly made this claim, but has never alleged facts indicating that Henderson had the authority to prosecute Noe, particularly while he was prosecuting her husband with her as a State's witness.

Fourteenth Amendment rights by denying him "protection from crimes committed against him," "preventing" him "from obtaining remedies," and denying his right to be heard on his claims against Noe.  In support, Mr. Mondonedo alleged that "during his trial" he asked defendant Henderson to investigate and prosecute Noe, but Henderson refused; and that the Deatheridges filed a formal complaint with the Topeka Police Department, but the TPD refused to investigate due to Henderson's recommendation.[16]

In the SCRNORD the court found that plaintiff's allegations failed to state a claim against defendant Henderson because they are conclusory[17] and Mr. Mondonedo had no constitutional right to have Noe criminally prosecuted.  The court further found that the doctrine of prosecutorial immunity barred damages claims against defendant Henderson based on allegations that Henderson suborned Noe's trial testimony, helped Noe "cover up" her own crimes to appear more credible as a witness, and declined to prosecute Noe.

In his Response, plaintiff argues that immunity applies only when the prosecutor is acting as an officer of the court and depends "upon the function" being undertaken; and "does not

---

[16]    Plaintiff's allegations regarding the TPD appear to be hearsay upon hearsay.

[17]    For example, plaintiff's allegations that defendant Henderson "neglect(ed) to prevent the conspiracy" and did not act "to prevent the violations of plaintiff's Constitutional Rights" are nothing but conclusory statements.

apply" when a prosecutor "knowingly violate(s) the law" or is engaged in "other tasks." While the court does not disagree with these legal arguments, plaintiff utterly fails to allege facts showing that any such exception applies in his case. Instead, plaintiff follows his legal arguments with the completely conclusory statement that "all actions alleged herein" by defendant Henderson were committed "outside the scope of his role as a prosecutor." Plaintiff alleges no additional facts to show that defendant Henderson acted outside his prosecutorial role. The court finds that defendant Henderson is likewise entitled to prosecutorial immunity based upon plaintiff's allegation that Henderson "engaged in factual search of the allegations made by (Noe) against plaintiff" for purposes of prosecuting plaintiff.

Plaintiff's claim that his legal remedies against Noe were denied by defendants' acts likewise remains nothing more than a conclusory statement. As noted, Mr. Mondonedo has never described his pursuit of an available remedy against Noe and explained how it was actually impeded by her move to Texas.

### D.  No Jurisdiction over State Law Claims

Plaintiff asserts that this court has jurisdiction over his state-law claims against defendants under 28 U.S.C. § 1367. Under § 1367, a court has supplemental jurisdiction over a plaintiff's state law claims that arose from the "same nucleus

of operative facts," but only if jurisdiction is properly invoked under either § 1331 or § 1332. Based on the findings herein and in the SCRNORD that federal jurisdiction has not been established, the court declines to consider plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3)(providing that a district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction"). *Clements v. Chapman*, 189 Fed.Appx. 688, 691-693 (10th Cir. 2006).

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's Motions to Proceed without Prepayment of Fees (Docs. 3, 4, & 5) are granted. Plaintiff is hereby assessed the remainder of the $350.00 filing fee[18] to be paid through payments automatically deducted from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2). The Finance Office of the Facility where plaintiff is currently incarcerated is directed by copy of this Order to collect from plaintiff's account and pay to the clerk of the court twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until plaintiff's outstanding filing fee obligation has been paid in full. Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the

---

[18]     Plaintiff submitted the initial partial filing fee of $10.00 assessed by the court, and thus the remainder due is $340.00.

filing fee, including but not limited to providing any written authorization required by the custodian or any future custodian to disburse funds from his account.

**IT IS FURTHER ORDERED** that this action is dismissed for failure to allege facts to establish federal court jurisdiction, for failure to state a claim on which relief may be granted, and as frivolous pursuant to 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

The clerk is directed to send a copy of this Order to plaintiff, to the finance officer at the institution in which plaintiff is currently confined, and to the court's finance office.

**IT IS SO ORDERED.**

Dated this 22nd day of October, 2014, at Topeka, Kansas.

**s/Sam A. Crow**
**U.S. Senior District Judge**